The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Mary Moore Hoag and the briefs and oral arguments before the Full Commission. Based upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, AFFIRMS in part and MODIFIES in part the Opinion and Award of the Deputy Commissioner.
***********
The Full Commission finds as fact and concludes as matters of law the following:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between plaintiff and defendant-employer at all relevant times.
3. Cigna Property and Casualty is the carrier on the risk.
4. Plaintiff suffered a compensable workers compensation claim involving bilateral carpal tunnel syndrome occurring on or about 14 March 1994.
5. The Industrial Commission on 14 July 1994 approved an Industrial Commission Form 21 approving plaintiff's injury for bilateral carpal tunnel syndrome.
6. Per the Industrial Commission Form 21, plaintiff's average weekly wage was $391.20, yielding a compensation rate of $260.81 per week.
7. Plaintiff received a 4% permanent partial disability rating to each hand approved per a Form 26 Agreement on 10 April 1996.
***********
Based upon all of the competent evidence of record, the Full Commission adopts the findings of fact of the Deputy Commissioner as follows:
 FINDINGS OF FACT
1. Plaintiff is a 32-year-old female, married with one son. She is a resident of Windsor, North Carolina.
2. Plaintiff was a packer at defendant-employer's. Her work was repetitive.
3. On 14 March 1994, plaintiff suffered an injury resulting in bilateral carpal tunnel syndrome. The claim was accepted and the Industrial Commission on 14 July 1994 approved a Form 21.
4. Plaintiff presented to Dr. George S. Edwards, Jr., on 13 May 1994. Dr. Edwards referred plaintiff for NCV testing. On 25 May 1994, Dr. Edwards diagnosed plaintiff with bilateral carpal tunnel syndrome with profound motor wasting and highly abnormal NCV testing. Plaintiff underwent a right carpal tunnel release by Dr. Edwards on 23 June 1994 and a left carpal tunnel release on 18 August 1994.
5. Following surgery, plaintiff continued to treat with Dr. Edwards and complained of pain and swelling in her hands. As of 25 January 1995, plaintiff had reached maximum medical improvement and Dr. Edwards assigned a 4% disability rating to each hand. He returned plaintiff to a nut inspection job with defendant-employer following the review of the job description. As of 25 January 1995, sensitivity in the median nerve distribution was normal and there was negative Tinel and Phalen testing. Plaintiff's alternating grip measure was 53 pounds bilaterally which was mildly weaker than expected for a female plaintiff's age.
6. Plaintiff returned to work for defendant-employer following her release by Dr. Edwards and worked until April of 1996 when defendant-employer's plant closed.
7. Plaintiff continued to experience pain and numbness in her hands. Dr. Leonard Reaves, an internist and gastroenterologist evaluated her, on 12 September 1994. In October 1994, Dr. Reaves referred plaintiff to Dr. Greg Hardy, a neurologist in Greenville, North Carolina. Dr. Hardy examined plaintiff on 31 October 1994, but found no residual evidence of carpal tunnel syndrome. Dr. Reaves subsequently referred plaintiff to Dr. Raymond Iglecia.
8. Plaintiff presented to Dr. Iglecia, a board-certified psychiatrist, on 22 December 1994, 11 January 1995 and 2 February 1995. Dr. Iglecia referred plaintiff for NCV studies. These studies were performed on 23 December 1994 and demonstrated some evidence of carpal tunnel syndrome. Dr. Iglecia has not seen plaintiff since 2 February 1995 and does not know her current condition. Dr. Iglecia did concede that based on Dr. Edwards' evaluation of 8 May 1997, without consideration of the NCV study performed on 23 December 1994, he would not recommend surgery. Dr. Iglecia referred plaintiff to Dr. Glenn Ray Carwell, Jr.
9. Plaintiff presented to Dr. Carwell on 1 February 1995 and 30 July 1997. Dr. Carwell is board certified in general surgery with board certification in plastic surgery and a certification in hand surgery by the board of plastic surgery. Dr. Carwell found plaintiff's physical examination to be consistent with carpal tunnel syndrome. He also reviewed the NCV study ordered by Dr. Iglecia in December 1994. Dr. Carwell recommended plaintiff undergo additional carpal tunnel surgery for her continuing complaints.
10. Dr. Edwards last saw plaintiff on 8 May 1997. At that time, Dr. Edwards found no significant pathology on examination. There was no clear-cut sensory deficit to light touch testing. Tinel testing was negative. Phalen's testing caused numbness in all ten fingers and was not restricted to the medial nerve distribution. No significant atrophy was noted. Dr. Edwards did not recommend any further treatment for carpal tunnel syndrome. Dr. Edwards reviewed all medical reports form other physicians including Dr. Reaves in December 1994 through Dr. Carwell's of July 1997 and did not see any evidence sufficient to change his opinion that further surgery was not warranted. However, it should be noted that Dr. Edwards considered plaintiff to be highly hysterical and was not keen on a continuing relationship.
11. Dr. Carwell was educated at Center College of Kentucky and received and M.D. from Vanderbilt. He was both an intern and resident of Duke University. He had a neurosurgery fellowship in Vienna and has had post-graduate training in plastic surgery. Dr. Carwell is certified by the American Board of Surgery, The American Board of Plastic Surgery and has added qualifications in hand surgery. He is a Fellow of the American Colleges of Surgeons.
12. According to Dr. Carwell, plaintiff in 1997 had median nerve problems and needed surgery to take the pressure off the median nerve. It was Dr. Carwell's opinion that a second surgery would be in the ninety percent range of producing an improvement with plaintiff's hands. Dr. Carwell strongly recommended surgery to relieve her symptoms and cure her bilateral carpal tunnel syndrome.
13. Dr. Leonard G. Reaves of Cashie Medical Center, who examined plaintiff in November 1994 and in March 1995 also recommended surgery.
14. The preponderance of the medical evidence of record strongly supports the conclusion that plaintiff needs and would benefit from further surgery for carpal tunnel syndrome to effect a cure, give relief and lessen her period of disability.
15. Defendants acted upon reasonable grounds in defending this case and therefore are not responsible for the costs of plaintiff's attorney in litigating this case.
***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff has proven by a preponderance and greater weight of the evidence of record that additional surgery for carpal tunnel syndrome is necessary to effect a cure, give relief and lessen the period of disability. N.C. Gen. Stat. § 97-25.
2. Defendants acted upon reasonable grounds in defending this case and therefore are not responsible for plaintiff's attorney fees. N.C. Gen. Stat. § 97-88.1.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay for all medical expenses for additional surgery for carpal tunnel syndrome in accordance with the accepted procedures of the Industrial Commission.
2. Defendants shall pay the costs.
This 29th day of April 1999.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/_____________ J. HOWARD BUNN, JR. CHAIRMAN
S/_____________ DIANNE C. SELLERS COMMISSIONER